1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

BENJAMIN BANUELOS,

Plaintiff,

v.

DOMINOS PIZZA LLC, A MICHIGAN
LIMITED LIABILITY COMPANY,

Defendant.

Case No.  5:24-cv-07085-BLF

**ORDER GRANTING MOTION TO
REMAND; TERMINATING MOTION
TO COMPEL ARBITRATION; AND
VACATING INITIAL CASE
MANAGEMENT CONFERENCE**

[Re:  ECF Nos. 8, 29, 30, 43]

Before the Court is Plaintiff Benjamin Banuelos's ("Plaintiff" or "Banuelos") Motion to
Remand Action to State Court.  ECF No. 8 ("Mot.").  Defendant Domino's Pizza LLC
("Defendant" or "Domino's") opposes the motion, ECF No. 16 ("Opp."), and Plaintiff filed a
reply brief in support of his motion, ECF No. 19 ("Reply").  The Court previously found that this
motion is suitable for disposition without oral argument, *see* Civ. L.R. 7-1(b), and vacated the
hearing set for February 20, 2025.  ECF No. 39.

For the following reasons, the Court GRANTS Plaintiff's motion.  Because the Court
orders that this matter be remanded to the Superior Court of California for the County of Santa
Clara, the Court TERMINATES WITHOUT PREJUDICE Defendant's pending Motion to
Compel Arbitration (ECF Nos. 29, 20) and VACATES the Initial Case Management Conference
scheduled for March 20, 2025 (ECF No. 43).

## I.    BACKGROUND

On August 27, 2024, Plaintiff Benjamin Banuelos filed this putative class action for
violations of California wage and hour laws against Defendant Domino's Pizza LLC in the
Superior Court of California for the County of Santa Clara.  ECF No. 1-1, Ex. A to Not. of

1    Removal ("Compl.").  Banuelos is a resident of Chino, California who worked for Domino's in

2    California as a non-exempt employee between approximately November 2023 and December

3    2024.  *Id.* ¶ 7.   Banuelos alleges that during this time, Defendant, at times, "failed to pay [him] for

4    all hours worked" and failed to provide the requisite meal periods and rest periods, *id.* ¶¶ 13–19,

5    among other employment-related violations.  The Complaint includes nine causes of action:

6    (1) failure to pay minimum and straight time wages, *id.* ¶¶ 32–41; (2) failure to pay overtime

7    wages, *id.* ¶¶ 42–50; (3) failure to provide meal periods, *id.* ¶¶ 51–54; (4) failure to authorize and

8    permit rest periods, *id.* ¶¶ 55–58; (5) failure to timely pay final wages at termination, *id.* ¶¶ 59–65;

9    (6) failure to provide and maintain accurate and compliant wage statements, *id.* ¶¶ 66–73;

10   (7) failure to indemnify employees for expenditures, *id.* ¶¶ 74–78; (8) failure to produce requested

11   employment records, *id.* ¶¶ 79–87; and (9) unfair business practices, *id.* ¶¶ 88–104.  Banuelos

12   seeks to represent a class of "[a]ll persons who worked for any Defendant in California as an

13   hourly-paid or non-exempt employee at any time during the period beginning four years before the

14   filing of the initial complaint in this action and ending when notice to the Class is sent."  *Id.* ¶ 25.

15        Domino's was served on September 9, 2024, ECF No. 1-4, and timely removed the action

16   to the U.S. District Court for the Northern District of California on October 9, 2024, ECF No. 1.

17   Removal jurisdiction was based on the Class Action Fairness Act of 2005 ("CAFA").  *Id.* ¶ 1.  The

18   next day, Banuelos moved to remand the action to the state court, challenging Defendant's ability

19   to show by a preponderance of the evidence that the amount in controversy exceeds the minimum

20   required to invoke CAFA jurisdiction.  *See* Mot. at 2.

21   **II.    LEGAL STANDARD**

22        In general, "any civil action brought in a State court of which the district courts of the

23   United States have original jurisdiction, may be removed by the defendant . . . to the district court

24   of the United States for the district and division embracing the place where such action is

25   pending."  28 U.S.C. § 1441(a).  Pursuant to the Class Action Fairness Act ("CAFA"), federal

26   courts have original jurisdiction over state law actions where the amount in controversy exceeds

27   the sum or value of $5,000,000 (exclusive of interest and costs), the number of members of all

28   proposed plaintiff classes in the aggregate is more than 100, and any member of a class of

plaintiffs is a citizen of a State different from any defendant.  28 U.S.C. § 1332(d).  While generally "[t]he removal statute is strictly construed, and any doubt about the right of removal requires resolution in favor of remand," *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009) (citing *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992)), "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court," *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014) (citing *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 595 (2013)); *see also Jordan v. Nationstar Mortg. LLC*, 781 F.3d 1178, 1183 (9th Cir. 2015).

In seeking removal under CAFA, the defendant bears the burden of establishing federal jurisdiction.  *See Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015).  To satisfy this burden, the defendant need include "only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold" in its notice of removal.  *Dart Cherokee*, 574 U.S. at 89.  "Thereafter, the plaintiff can contest the amount in controversy by making either a 'facial' or 'factual' attack on the defendant's jurisdictional allegations."  *Harris v. KM Indus., Inc.*, 980 F.3d 694, 699 (9th Cir. 2020) (citing *Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 964 (9th Cir. 2020)).  "A 'facial' attack accepts the truth of the [defendant's] allegations but asserts that they 'are insufficient on their face to invoke federal jurisdiction.'"  *Salter*, 974 F.3d at 964 (quoting *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014)).  A factual attack "contests the truth of the . . . allegations" by the defendant.  *Id.*  Where the plaintiff has mounted a factual attack on jurisdiction, the defendant must show, by a preponderance of the evidence, that the amount-in-controversy requirement is met.  *Harris*, 980 F.3d at 699.  "The parties may submit evidence outside the complaint, including affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'"  *Ibarra*, 775 F.3d at 1197 (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)).

"Under this system, a defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions."  *Id.*  However, "in assessing the amount in controversy, a removing defendant is permitted to rely on 'a chain of reasoning that includes assumptions.'"  *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 925 (9th Cir. 2019) (quoting

1    *Ibarra*, 775 F.3d at 1199).  The defendant "need not make the plaintiff's case for it or prove the

2    amount in controversy beyond a legal certainty."  *Harris*, 980 F.3d at 701.

3    **III.    REQUEST FOR JUDICIAL NOTICE**

4          Plaintiff requests that the Court take judicial notice of nineteen court filings.  ECF No. 19-

5    1, Request for Judicial Not. in Support of Plf.'s Mot. to Remand ("RJN").  A court may take

6    judicial notice of facts "not subject to reasonable dispute" because they either are "generally

7    known within the trial court's territorial jurisdiction," or they "can be accurately and readily

8    determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).

9    In addition, a court may take judicial notice of court filings related to the proceeding before the

10   court.  *See Frlekin v. Apple, Inc.*, 979 F.3d 639, 643 n.1 (9th Cir. 2020) ("Plaintiffs' Motion for

11   Judicial Notice is granted because these documents are court filings in the California Supreme

12   Court proceeding regarding the question we certified."); *accord Burbank-Glendale-Pasadena*

13   *Airport Auth. v. City of Burbank*, 136 F.3d 1360, 1364 (9th Cir. 1998); *Holder v. Holder*, 305 F.3d

14   854, 866 (9th Cir. 2002).  "Where a party requests notice of filings made in other courts, notice

15   may only be taken for the limited purpose of recognizing the judicial act that the order or filing

16   represents, not for the truth of the matters asserted in those filings."  *Contra Costa Cnty. Deputy*

17   *Sheriffs Ass'n v. Mitchoff*, No. 15-cv-00261, 2015 WL 1322577, at *2 (N.D. Cal. Mar. 24, 2015)

18   (internal alterations omitted).  Plaintiff's request for judicial notice is GRANTED as to the

19   existence of the court filings attached to the RJN.

20   **IV.    DISCUSSION**

21         Banuelos accuses Domino's of "making unsupported assumptions" in its Notice of

22   Removal in order to arrive at the minimum amount in controversy for establishing federal CAFA

23   jurisdiction.[1]  Mot. at 2.  However, Defendant's only obligation at the point of removal was to

24   include "a plausible allegation that the amount in controversy exceeds the jurisdictional

25   threshold."  *Dart Cherokee*, 574 U.S. at 89.  The requirement to come forward with concrete proof

26   sufficient to establish the amount in controversy by a preponderance of the evidence is triggered

27   _____

28   [1] Banuelos does not challenge the other two jurisdictional requirements under CAFA: class size
     and minimal diversity.  *See generally* Mot.

United States District Court
Northern District of California

only if—and when—either the Court or the plaintiff questions that allegation. *Id.*

That more significant burden of proof has been triggered by Plaintiff's motion to remand, which expressly challenges Defendant's ability to show that the amount-in-controversy requirement is met. To address this challenge, Defendant submits two declarations: one from a company employee, and one from an outside consultant. ECF No. 16-1, Decl. of Tammy Clifft in Support of Opp. to Plf.'s Mot. to Remand ("Clifft Decl."); ECF No. 16-2, Decl. of Clayton Reck in Support of Opp. to Plf.'s Mot. to Remand ("Reck Decl."). Tammy Clifft, a Domino's HRIS Manager, attests that she "reviewed the relevant job history and compensation information for the current and former non-exempt and hourly employees of Domino's who worked in California during the Statutory Period," and that this "job history data and wage rate information" was pulled and transmitted to an outside consulting company "to analyze for total number of Putative Class Members, the average hourly rate of pay, and the number of workweeks worked." Clifft Decl. ¶ 4. Clifft also attests that "Putative Class Members were expected to work eight hours a day, five days a week, on average" and "would also perform overtime work." *Id.* ¶ 5. In turn, Defendant's consultant attests that he and his team analyzed Defendant's data and determined the following calculations with regard to the Putative Class:

- There are approximately 449 Putative Class Members during the Statutory Period.
- The total number of workweeks worked during the Statutory Period by Putative Class Members is 29,799.
- The average rate of pay during the Statutory Period was $23.68/hour.
- Approximately 254 Putative Class Members were terminated between August 27, 2021 and October 9, 2024. The average rate of pay during this three-year period was $24.22/hour.
- Approximately 192 Putative Class Members worked at Domino's between August 27, 2023 (one year before the Complaint was filed) through October 9, 2024 and worked approximately 8,032 workweeks during this time period.

Reck Decl. ¶ 4. On reply, Plaintiff does not submit his own evidence, instead focusing on critiquing the reasonableness of Defendant's assumptions. *See generally* Reply. The Court

considers Defendant's evidence and assumptions for each subcategory of the total amount in controversy in turn.

### A. Straight Time and Overtime Claims

Pursuant to California Labor Code section 204, "[a]ll wages . . . earned by any person in any employment are due and payable twice during each calendar month." Cal. Lab. Code § 204(a). In addition, under California Labor Code section 510, "[a]ny work in excess of eight hours in one workday . . . shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee." *Id.* § 510(a). "Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee." *Id.* Under Labor Code section 1194, "any employee receiving less than the legal minimum wage or the legal overtime compensation . . . is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation." *Id.* § 1194(a). Based on these statutory provisions, Plaintiff asserts causes of action for Defendant's alleged failure to pay members of the putative class (1) compensation for all hours worked, and (2) overtime compensation. Compl. ¶¶ 32–50.

On removal, Defendant assumed that each putative class member was underpaid by two hours of straight time per workweek. ECF No. 1 ("Not. of Removal") ¶ 32. In its Opposition to Plaintiff's motion to remand, however, Defendant adopts instead the assumption that putative class members worked an average of five hours of unpaid straight time and five hours of unpaid overtime per workweek. Opp. at 4. Defendant argues that a 100 percent violation rate "is plausible" based on "the breadth of Plaintiff's overtime and minimum wage claims," but also recognizes that California district courts have generally found lower assumed violation rates more appropriate for purposes of estimating the amount in controversy at the removal stage. *Id.* Thus, Defendant adjusts its assumed violation rate downward to 25 percent for purposes of calculating the amount in controversy, in effect estimating 1.25 hours of unpaid straight time wages and 1.25 hours of unpaid overtime wages per workweek, per class member. *Id.* at 5. Defendant then calculates the value of the estimated straight time and overtime violations using the average hourly pay for class members during the Statutory Period, which was $23.68 per hour. *Id.*

Plaintiff does not respond with any competing evidence but objects to Defendant's assumptions as unreasonable. First, Plaintiff points out that Defendant inexplicably increased its estimated violation rate between the Notice of Removal and its opposition to Plaintiff's motion to remand. Reply at 2. Then, Plaintiff briefly argues that Defendant cannot justify its assumptions using citations to other cases with unique facts. *Id.*

In CAFA removal cases, the violation rate inquiry is fact-specific. The Ninth Circuit allows a 100 percent violation rate to be assumed in some cases, *see LaCross v. Knight Transportation, Inc.*, 775 F.3d 1200, 1202–03 (9th Cir. 2015), but has found the assumption unwarranted in other cases, *see Ibarra*, 775 F.3d at 1199–1200. Generally, a party removing pursuant to CAFA may assume a 100 percent violation rate when that assumption is "supported directly by, or reasonably inferred from, the allegations in the complaint." *Cortez v. United Nat. Foods, Inc.*, No. 18-cv-04603, 2019 WL 955001, at *5 (N.D. Cal. Feb. 27, 2019) (quoting *Ford v. CEC Entm't, Inc.*, No. 14-cv-01420, 2014 WL 3377990, at *3 (N.D. Cal. July 10, 2014)) (internal quotation marks omitted). This rule of thumb is refined by the Ninth Circuit's statement in *Ibarra* that even "a 'pattern and practice' of doing something does not necessarily mean *always* doing something." 775 F.3d at 1198–99 (emphasis in original).

The allegations in Plaintiff's Complaint clearly do not support an assumed violation rate of 100 percent. Plaintiff alleges that Defendant "at times" failed to provide employees' mandated compensation and benefits, and that such failures applied to "some, but not necessarily all employees."[2] *E.g.*, Compl. ¶ 4. Perhaps recognizing the import of this limiting language, Defendant revised its assumptions in its Opposition to Plaintiff's motion to remand. Originally, Defendant had proffered that every class member experienced two hours of unpaid straight time per week. Not. of Removal ¶ 32. Now Defendant states that "Domino's will conservatively assume a 25% violation rate, which is equivalent to 1.25 hours (5 hours x .25) of unpaid straight time wages per workweek and 1.25 hours (5 x .25) of unpaid overtime wages per workweek." Opp. at 5.

---

[2] Although not before the Court for purposes of the present motion, the Court notes that the qualifiers used in Plaintiff's Complaint may work against Plaintiff at the class certification stage.

United States District Court
Northern District of California

1        Defendant's violation rate formula highlights an important nuance regarding assumed

2  violation rates.  Specifically, the use of "(5 hours x .25)" demonstrates that the violation rate

3  effectively reflects an assumption that 25 percent of the putative class members experienced five

4  hours of unpaid straight time (or overtime) per week.  In other words, there are two crucial

5  dimensions to the assumptions that defendants make in seeking CAFA removal—namely, (1) the

6  percentage of class members who experience each violation, and (2) the frequency of the

7  violations for those who experience them.  These two dimensions blur together into the "assumed

8  violation rate."  Plaintiff is astute in noting that, although Defendant appears to suggest that it is

9  adopting a conservative—i.e., lower—violation rate in its Opposition, it has in fact done the

10  opposite, by dramatically increasing the assumed violation *frequency* despite decreasing the

11  assumed percentage of putative class members experiencing violations.  *See* Reply at 2.  However,

12  while the Court agrees that the limiting language in the Complaint militates in favor of a lowered

13  assumption about the percentage of class members who experienced violations, the Court sees no

14  basis for simultaneously quintupling the violation hours.

15        The Court acknowledges that "[t]he amount in controversy is simply an estimate of the

16  total amount in dispute, not a prospective assessment of [a] defendant's liability," and that

17  defendants are not required to prove a precise violation rate.  *Arias*, 936 F.3d at 927.  On the other

18  hand, however, an assumed violation rate, standing alone, "does 'not take the place of evidence.'"

19  *Peters v. TA Operating LLC*, No. 22-cv-1831, 2023 WL 1070350, at *9 (C.D. Cal. Jan. 26, 2023)

20  (citing *Vanegas v. DHL Express (USA), Inc.*, No. 21-cv-01538, 2021 WL 1139743, at *4 (C.D.

21  Cal. Mar. 24, 2021)).  There must be some basis in evidence or in a plaintiff's complaint

22  indicating why the violation rate selected is more reasonable than any other number that a

23  defendant could have selected, in order to protect against defendants simply "pick[ing] [a]

24  violation rate because it might seem low enough to be facially 'reasonable' and still high enough

25  to keep them on track to hit their magic number of $5,000,000."  *Id.* (citing *Cackin v. Ingersoll-

26  Rand Indus. U.S., Inc.*, No. 20-cv-02281, 2021 WL 2222217, at *3 (C.D. Cal. June 2, 2021)).  In

27  light of this risk, other courts have advocated that "[f]aced with a vague pleading, it seems . . . that

28  the much-more-sensible route would be to try to pin Plaintiff down[] in state court" regarding the

United States District Court
Northern District of California

1    frequency of alleged violations prior to seeking removal, such as by seeking discovery from the

2    Plaintiff as to how frequently he experienced violations, and then extrapolating from there with

3    regard to the rest of the class. *See Toribio v. ITT Aerospace Controls LLC*, No. 19-cv-5430, 2019

4    WL 4254935, at *3 (C.D. Cal. Sept. 5, 2019).

5          This Court agrees. Here, not only did Defendant fail to provide any such evidentiary

6    support for its assumed frequency of straight time and overtime wage violations, Defendant also

7    selected a violation frequency that is high relative to many other cases. Defendant effectively

8    suggests that 25 percent of class members worked an hour of unpaid straight time and/or an hour

9    of unpaid overtime *every day* during an average work week. Courts in this Circuit have rejected

10    the same and lower assumed violation frequencies as unreasonable. *E.g.*, *Peters*, 2023 WL

11    1070350, at *8–10 (rejecting an assumed violation frequency of "an hour of overtime wages and

12    an hour of minimum wage every four weeks"); *Calderon v. Bio-Med. Applications of Mission*

13    *Hills, Inc.*, No. 23-cv-03382, 2023 WL 6130524, at *5–6 (C.D. Cal. Sept. 18, 2023) (rejecting an

14    assumed violation frequency of ".5 hours of overtime per week").

15          The Court acknowledges, as other courts have, that another court in this Circuit might

16    come out differently on the evidence that Defendant has offered. *See Peters*, 2023 WL 1070350,

17    at *10 (noting that "district courts are 'all-over-the-map in deciding how to handle, and whether to

18    accept, the type of approach' Defendants advocate" (quoting *Toribio*, 2019 WL 4254935, at *3)).

19    Indeed, this Court itself has in the past accepted assumed violation rates of 25 percent or more

20    even in the absence of specific supporting evidence or quantifying complaint language. *E.g.*,

21    *Ramirez v. HV Glob. Mgmt. Corp.*, No. 21-cv-09955, 2022 WL 1210402, at *4 (N.D. Cal. Apr. 25,

22    2022) (accepting a 25 percent violation rate in a case where the complaint alleged a "pattern and

23    practice" of violations); *Brown v. Janus of Santa Cruz*, No. 21-cv-00094, 2021 WL 3413349, at *6

24    (N.D. Cal. Aug. 5, 2021) (accepting a 25 percent violation rate where a plaintiff alleged that

25    overtime went unpaid "frequently"). But the Court now aligns with the more recent trend of

26    requiring some basis on which the particular assumed violation rate is selected, in order to avoid

27    what other courts have termed "a wasteful and silly, but routine, exercise in mathematical

28    fantasyland." *Gonzalez v. Randstad Pros. US, LLC*, No. 22-cv-05744, 2022 WL 17081053, at *3

1    (C.D. Cal. Nov. 18, 2022) (quoting *Cackin*, 2021 WL 2222217, at *3); *cf. Cackin*, 2021 WL

2    2222217, at *3 (explaining that the "past approach to determining whether the $5 million CAFA

3    threshold has been met . . . leaves something to be desired" because it could permit defendants to

4    translate vague complaint language into a violation rate without evidentiary support).  In this case,

5    the Court believes that Defendant's evidence falls short of showing, by a preponderance of the

6    evidence, that Defendant has made reasonable assumptions as to the violation frequency

7    applicable to Plaintiff's claims.  *See Ibarra*, 775 F.3d at 1199 (explaining that although the

8    damages assessment "may require a chain of reasoning that includes assumptions," those

9    "assumptions cannot be pulled from thin air but need some reasonable ground underlying them").

10          "Where a defendant's assumption is unreasonable on its face without comparison to a

11   better alternative, a district court may be justified in simply rejecting that assumption and

12   concluding that the defendant failed to meet its burden."  *Jauregui v. Roadrunner Transp. Servs.,*

13   *Inc.*, 28 F.4th 989, 996 (9th Cir. 2022).  In this case, however, there is an alternative available to

14   the Court for the assumed violation frequency on Plaintiff's straight time claim.  Specifically, the

15   notice of removal assumed a violation frequency of two hours of unpaid straight time per week.

16   Not. of Removal ¶ 32.  Since the Court finds this assumption more reasonable than an assumption

17   of an hour of unpaid straight time and an hour of unpaid overtime every day, the Court will adopt

18   the violation frequency asserted in the removal notice.  Regarding the percentage of putative class

19   members who experienced these violations, the Court believes that 25 percent is more reasonable

20   than 100 percent.  Accordingly, the Court will calculate a new amount-in-controversy based upon

21   a revised assumption that 25 percent of putative class member employees worked two hours of

22   unpaid straight time weekly.  The new calculation is:

23          <u>Straight Time</u>: 29,799 workweeks x 2 hours/workweek x .25 x $23.68/hour = $352,820.16

24          Regarding Plaintiff's overtime claim, the notice of removal did not offer an assumed

25   violation frequency for overtime violations and the Court has concluded that Defendant's

26   ungrounded violation frequency assumption in its Opposition to the motion to remand—i.e., that

27   25 percent of putative class members worked an average of five hours of unpaid overtime per

28   workweek, *see* Opp. at 5—is unreasonable.  However, in light of the Ninth Circuit's guidance that

United States District Court
Northern District of California

district courts should avoid "zeroing out" claims where a better assumption is available, *see Jauregui*, 28 F.4th at 996, the Court finds it appropriate to assume the same violation rate as accepted for the straight time wage claim for purposes of estimating the value of Plaintiff's overtime claim.  Therefore, the new calculation for the amount in controversy on Plaintiff's overtime wage claim is:

Overtime: 29,799 workweeks x 2 hours/workweek x .25 x $35.52/hour[3] = $529,230.24

In total, Plaintiff's straight time and overtime wage claims add $882,050.40 to the amount in controversy in this action.

### B. Liquidated Damages

Plaintiff's Complaint alleges that he is entitled to "liquidated damages (double damages) for Defendants' failure to pay minimum wages."  Compl. ¶ 39.  Under California Labor Code section 1194.2, "[i]n any action under Section 98, 1193.6, 1194, or 1197.1 to recover wages because of the payment of a wage less than the minimum wage fixed by an order of the commission or by statute, an employee shall be entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon."  Cal. Lab. Code § 1194.2(a).  Regarding Plaintiff's liquidated damages claim, Defendant argues that Plaintiff "alleges that liquidated damages are double the amount of the alleged straight time damages" and says that Plaintiff has not raised any specific objections to Defendant's calculation.  Opp. at 5.  On Reply, Plaintiff argues that liquidated damages cannot be at issue at a rate higher than minimum wage.  Reply at 3 (citing *Martinez v. Combs*, 49 Cal. 4th 35, 48 n. 8 (2010)).

Since the beginning of the prospective class period, California's minimum wage has been at least $13.00 per hour.  *See* Cal. Lab. Code § 1182.12(b)(1)(D).  Because neither Party provided guidance on the proper calculation of the amount in controversy regarding the request for liquidated damages, the Court will base a revised calculation on a $13.00 minimum wage.  Accordingly, the estimated value of Plaintiff's liquidated damages claim is $193,693.50 (29,799 workweeks x 2 hours/workweek x .25 x $13.00/hour).

---

[3] Overtime wages are compensated at one and one-half times the regular rate of an employee's pay.  Cal. Lab. Code § 510(a).

1

## C. Meal and Rest Period Claims

2      California employers must authorize and permit employees to take a least one rest period

3  on shifts lasting at least 3.5 hours, and one 30-minute meal period on shifts of more than five

4  hours.  Cal. Lab. Code § 512; Cal. Code Regs. Tit. 8 § 11070, subd. 12(A).  For any day on which

5  a compliant meal or rest period is not provided, an employer must pay an additional hour of pay at

6  the employee's regular rate of pay.  Cal. Lab. Code § 226.7(c).

7      Defendant assumes that each putative class member experienced 1.25 meal period

8  violations and 1.25 rest break violations per workweek.  Opp. at 6–7.  In response to Plaintiff's

9  motion, Defendant argues that the Complaint states only that Defendants at least sometimes failed

10  to compensate Plaintiff and/or Class members for rest and meal periods.  Opp. at 6.  Based on

11  Plaintiff's failure to provide any details or evidence regarding the extent of these alleged

12  violations, Defendant argues that its use of an assumed 25 percent violation rate is in line with the

13  assumptions accepted in other cases in this circuit.  *Id.* at 6–7.  In response, Plaintiff argues only

14  that "Defendant's assumptions . . . are not justified by simply citing to other cases with different

15  facts and different allegations."  Reply at 3.

16      The Court agrees with Plaintiff.  Again, although Defendant is not required to "make the

17  plaintiff's case for [him] or prove the amount in controversy beyond a legal certainty," *Harris*, 980

18  F.3d at 701 (citing *Dart Cherokee*, 574 U.S. at 88–89), it must have some basis for selecting the

19  assumed violation frequency it uses.  Yet here, Defendant itself acknowledges that "Plaintiff's

20  Complaint offers no detail as to the extent of the meal and rest period violations it alleges took

21  place," Opp. at 6, and Defendant does not offer any evidence serving to clarify that admitted

22  ambiguity.  Thus, in line with the discussion regarding Plaintiff's straight time and overtime wage

23  claims, *see supra* section IV.A, the Court finds the assumption that each putative class member

24  experienced 1.25 meal period violations and 1.25 rest break violations per workweek untethered to

25  any evidence or any allegation in the Complaint.  Defendant is inarguably correct that Plaintiff's

26  Complaint is ambiguous, saying only that violations were experienced by "some, but not

27  necessarily all of the Class" and that "Defendants, at times, made it impossible or impracticable"

28  to take meal periods or rest breaks to which employees were entitled.  *See* Compl. ¶¶ 53, 57.  But

United States District Court
Northern District of California

that ambiguity does not give Defendant free rein to pluck an assumed violation rate from thin air. *Ibarra*, 775 F.3d at 1199; *see Cackin*, 2021 WL 2222217, at *3 ("If one is going to assume a violation rate based on nothing more than language in a complaint referencing a 'pattern and practice,' then there is no basis for suggesting that a violation rate of 25% is any more or less reasonable than a violation rate of once per week or once per month." (citing *Vanegas*, 2021 WL 1139743, at *3)).

Once again, though, the Court does not find it appropriate to completely "zero out" the value of this claim. Instead, in the absence of any proposed alternative violation frequency from Plaintiff, the Court will return to the assumption put forth in Defendant's notice of removal: that each putative class member was denied one meal break and one rest break per week. Assuming that these alleged violations went uncompensated for 25 percent of the class members, the recalculated amount in controversy for these two claims is as follows:

<u>Meal Periods</u>: 29,799 workweeks x 1 meal period violation/workweek (violation frequency) x .25 (percent of putative class affected) x $23.68/violation = $176,410.08

<u>Rest Breaks</u>: 29,799 workweeks x 1 rest break violation/workweek (violation frequency) x .25 (percent of putative class affected) x $23.68/violation = $176,410.08

The total assumed amount in controversy for Plaintiff's meal and rest break claims is therefore $352,820.16.

### D. Wage Statement Claim

Under California Labor Code section 226, an employer must furnish its employees with accurate itemized wage statements displaying various categories of information. Cal. Lab. Code § 226(a). Knowing and intentional failure to do so on the part of the employer entitles the employee to recover "the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000)." *Id.* § 226(e)(1).

Based on its argument that a one-year statute of limitations applies to this claim, Opp. at 8 (citing Cal. Code Civ. Proc. § 340(a), and *Hassan v. Praxair, Inc.*, No. 18-cv-02811, 2019 WL

3064435, at *5 (C.D. Cal. Mar. 4, 2019)), Defendant has submitted evidence indicating that it employed 192 non-exempt employees who worked approximately 8,032 workweeks during the relevant one-year period.  Reck Decl. ¶ 4.  Defendant's amount-in-controversy calculation for this claim assumes the maximum penalties available for those employees.  *Id.*  In challenging Defendant's assumptions regarding the amount in controversy for the wage statement claim, Plaintiff argues only that assuming the maximum available wage statement penalties is unreasonable in light of the limiting language used in the Complaint.  Reply at 3.

The Court finds that the Complaint in this action does not support an assumption that *all* non-exempt employees during the available limitations period would receive the *maximum* wage statement penalties.  Plaintiff has, again, included the same qualifiers that Defendant "at times" failed to provide employees with accurate wage statements, such that "some of, but not necessarily all of, the Class" suffered injury under California Labor Code section 226.  Compl. ¶¶ 68–72.  For purposes of estimating Defendant's maximum exposure, these allegations support the inference that potentially all of the relevant non-exempt employees would receive at least some wage statement penalties.  As a result, the Court is reluctant "zero-out" the amount-in-controversy estimate for this claim.  *See Williams v. VibrantCare Rehab., Inc.*, No. 22-16424, 2022 WL 17592428, at *1 (9th Cir. Dec. 13, 2022) (mem.) ("If a court finds an underlying assumption to be unreasonable compared to a different assumption, it must 'consider the claim under the better assumption—not just zero-out the claim.'"  (quoting *Jauregui*, 28 F.4th at 996)).  The Court therefore modifies Defendant's assumption, *see Jauregui*, 28 F.4th at 996, by adopting the more conservative assumed amount in controversy proposed by Plaintiff, *see* Reply at 5.  Accordingly, Plaintiff's wage statement claim adds $98,000.00 to the amount-in-controversy calculation.

### E.  Waiting Time Penalty Claim

"If an employer willfully fails to pay, without abatement or reduction . . . any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days."  Cal. Lab. Code § 203(a).

Defendant has assumed that all 254 non-exempt employees who separated from

1   employment with Domino's during the relevant period were owed at least some amount of unpaid

2   wages.  Opp. at 9.  Moreover, Defendant has assumed that all of those discharged employees could

3   receive the maximum waiting time penalties.  *Id.*  Plaintiff argues that this is unreasonable because

4   the Complaint says that Defendant "at times" failed to pay all wages due to Plaintiff and "some

5   of" the proposed class.  Reply at 3.

6           Regarding the prevalence of waiting time violations across all putative members of the

7   waiting time penalty subclass, the Court is not persuaded that it is reasonable to assume every

8   person could recover the *maximum* waiting time penalties available under the law.  Granted, this

9   Court has previously determined that an assumed 100 percent violation rate was reasonable where

10  a complaint gave no sense for the violation rate.  *E.g.*, *Trigueros v. Stanford Fed. Credit Union*,

11  No. 21-cv-01079, 2021 WL 2649241, at *5–6 (N.D. Cal. June 28, 2021).  But in this case, the

12  Court believes that Plaintiff's allegation that Defendant failed "at times" to pay all wages owed to

13  employees at their discharge renders it unreasonable to assume the maximum waiting time

14  penalties for purposes of the amount in controversy estimate.  Instead, the Court will again adopt

15  the more conservative assumed amount in controversy proposed by Plaintiff.  *See* Reply at 5.

16  Therefore, the waiting time penalty claim adds $369,112.80 to the amount-in-controversy

17  calculation.

18      **F.  Attorneys' Fees**

19          Finally, courts consider attorneys' fees when ascertaining whether a complaint meets the

20  amount-in-controversy requirement.  *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 794

21  (9th Cir. 2018).  However, the Court's "calculation of future attorneys' fees is limited by the

22  applicable contractual or statutory requirements that allow fee-shifting in the first place."  *Id.* at

23  796 (citing *Winterrowd v. Am. Gen. Annuity Ins. Co.*, 556 F.3d 815, 827 (9th Cir. 2009)).

24          Defendant argues that the amount in controversy calculation for attorneys' fees should use

25  a "benchmark" of 25 percent of the total damages, because the Ninth Circuit has confirmed that, in

26  class actions, such an attorneys' fees award is reasonable.  Opp. at 10 (citing *Six (6) Mexican

27  Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)).  In response, Plaintiff

28  argues that this this 25 percent benchmark should be disregarded, because "[w]hen attorneys' fees

United States District Court
Northern District of California

are requested at 25% of a common fund in a class action settlement, that 25% is not added to the total settlement amount as payment for attorneys' fees—it is subtracted from the total settlement amount." Reply at 4 (citing *Maciel v. M.A.C. Cosmetics, Inc.*, No. 22-cv-03885, 2022 WL 17340634, at *6 (N.D. Cal. Nov. 30, 2022)).

Plaintiff is correct that it does not make sense to assume a benchmark 25 percent attorneys' fee in this case. First, in reviewing CAFA amount-in-controversy disputes, the Ninth Circuit has expressly declined to adopt a *per se* rule that the attorneys' fees should be assumed to equal 25 percent of the estimated damages. *Fritsch*, 899 F.3d at 796. Second, while California Labor Code section 1194 permits employees to recover attorneys' fees in civil actions for "the unpaid balance of . . . minimum wage or overtime compensation" due, Cal. Lab. Code § 1194(a), the California Supreme Court has also explained that this section does not permit recovery of attorneys' fees for those who prevail in an action for rest periods or a number of other employment violations, *see Kirby v. Immoos Fire Prot., Inc.*, 53 Cal. 4th 1244, 1254–55 (2012). Thus, it is not clear that attorneys' fees are recoverable on all of Plaintiff's various claims.

That said, Defendant would fail to meet the jurisdictional threshold *even if* attorneys' fees could be recovered on all claims discussed above. "In estimating future attorneys' fees, district courts may . . . rely on 'their own knowledge of customary rates and their experience concerning reasonable and proper fees.'" *Fritsch*, 899 F.3d at 795 (quoting *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011)). Based on the Court's knowledge and experience regarding employment litigation, the Court finds it reasonable to expect that the attorneys' fees recoverable in this action would be approximately 20 percent of the damages amount. Therefore, assuming only for the sake of this remand motion that Plaintiff could recover attorneys' fees on all of the claims discussed above, the total anticipated attorneys' fees would be $379,135.37.

***

To sum up the above discussion, Defendant has demonstrated the following values:

| | |
|---|---|
| Straight Time and Overtime Claims: | $882,050.40 |
| Liquidated Damages: | $193,693.50 |
| Meal and Rest Period Claims: | $352,820.16 |

| | |
|---|---|
| Wage Statement Claim: | $98,000.00 |
| Waiting Time Penalties: | $369,112.80 |
| Attorneys' Fees: | $379,135.37 |
| **TOTAL:** | **$2,274,812.23** |

This amount is well below the CAFA minimum, and Defendant has not provided competent evidence of other amounts that the Court may take into account in calculating the full assumed amount in controversy.  Accordingly, Plaintiff is entitled to remand.

## V.    ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Plaintiff's Motion to Remand (ECF No. 8) is GRANTED.  This case is REMANDED to the Superior Court of California for the County of Santa Clara.

In light of this remand order, the Court TERMINATES WITHOUT PREJUDICE Defendant's pending Motion to Compel Arbitration (ECF Nos. 29, 30) and VACATES the Initial Case Management Conference scheduled for March 20, 2025 (ECF No. 43).


**IT IS SO ORDERED.**


Dated:  March 12, 2025

_____
BETH LABSON FREEMAN
United States District Judge

17